The next matter, No. 24-1119, G.P. v. Merrick Garland, et al. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning, Your Honors. May it please the Court? Sang-nyeok Kim for petitioner. Chief Judge Barron, may I reserve one minute for rebuttal? You may. Thank you. Your Honor, petitioner has been detained for more than three and a half years and is likely to exceed four years. During this time, petitioner has prevailed his underlying immigration petition for review before this Court in a way that is dispositive to his CAT claim. Now that, at a minimum, is a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future under Zabida's standard. So then the burden should be shifted to the government, and the government has to come up with some evidence to rebut that showing. And government has done nothing other than assertion that government has the capacity to obtain a travel document. On top of that, government does not promise that they will Can we start that assessment? I mean, on the logic of this, we could have, you could have brought this claim when he first filed, right? In other words, if he had been in detention at the six month and one day mark, while the initial proceeding, before any remands or anything, you could have brought this claim saying, you know what, he's going to win, so it's not reasonably likely, so he has to be released now. That's correct, Your Honor. And is there any authority suggesting that can be done? Because all of the cases seem to be instances in which the adjudication of the issues played out, and the future assessment of reasonability of removal starts from the moment where the government begins the process of figuring out, what can I now do to get the person out of the country? If there's a prohibition against removal, then they either have to find another country where the person could go to, and if there's no reasonable likelihood at that point, it would seem Zahavidas would apply, or they release the person and then the issue goes away. But if we start the calculation of, is this going to be indefinite, I just don't see the case law that suggests the way we do that is by making a merits assessment of the claim itself. That's not true in Clark. It's not true in Zahavidas. So I guess I interpret Your Honor's question as the calculation of the detention under 1231 does not begin until the end of withholding on the proceeding. No, the calculation of the limitations Zahavidas identifies on 1231, which is a calculation about, is this going to be an indefinite detention? How can we, you're saying we make that assessment by doing a kind of collateral merits assessment of the claim in a habeas proceeding, which we could do in any withholding case as long as there had been six months and a day of detention of the person. That seems to me a pretty strange way to read Zahavidas. It upsets the whole mechanism for doing review of withholding, which normally would go through the BIA proceeding, et cetera. Whereas all the cases seem to be situations in which we now know either you can be removed or you can't be. If it's six months and a day and we've come to that point, is it then likely the detention is going to go on indefinitely, either because there's no third country to give you to or the country that you could be removed to won't take you? That's not the situation at all. And the implications of what you're suggesting would mean essentially collateral tax on any withholding claim on the six months and a day. I understand Your Honor's point. But none of the cases that have been cited and this court cited that we are aware actually have the fact resembling this case. So one reason is in Zahavidas, the line in Zahavidas is when the government finds itself unable to remove. That's the line in Zahavidas. That's not the situation here. The government doesn't find itself unable to remove. It finds itself in the midst of a proceeding in which it will learn what the outcome is at the end of it, in which it's taking a position. So we're just not even at the stage that Zahavidas itself described itself as being when it would assess whether it was going to be indefinite detention. I understand. But, I'm sorry, the government can always find another country to remove if they can. If the petitioner does not fear to be removed to that country, then government can do so. But of course they could always do it to begin with. But they want to at this point, they have a place designated. They don't believe that they have to withhold removing as to that place. It's not costless to the government to go around finding some third country. That's a pretty demanding thing to put on the government. I don't think it's a demanding thing, especially when the government is taking, especially in this case, his claim is pretty strong in terms of the merits of the CAC claim. Yeah, but what I'm saying, your position, the logic of it, if we accept it, would seem to apply to every withholding case in which the person has been in six months and a day. And at that point, you bring a habeas action and our court now is supposed to do an independent assessment of the merits of the withholding claim. And the only way the government can avoid that is by finding a third country, no big deal. That's a huge deal to impose on the government. I understand, Your Honor. But I think the uniqueness of this case is different. So, for example, if there's a case where the person won before the IJ but then lost at the BIA, the case went back to the IJ, it is a little bit uncertain as to the likelihood of success in the underlying claim. Why? Because there's uncertainty because the BIA has to find it. We think the BIA is wrong quite often. You can still do a merits assessment, come in with your habeas, say BIA had a ridiculous decision overturning the IJ. IJ is clearly right. So it's obviously not reasonably foreseeable he'll be removed. Exact same case as this. I understand. But I think it's the government's burden to show and if it's not the case. And here the government has not even disputed anything other than mere assertion that government is only capable of getting an obtained tribute document. Government has not said any argument has to be made. Is that what this case turns on? In Chief Judge Barron's words, to paraphrase Chief Judge Barron, whether it is a big deal or not to find a place to go and implement that? Is that what this case turns on? Whether this case turns on is whether the government can actually remove this person from the United States. And government has to come up with some evidence to show that that's possible. Possible? In the reasonably foreseeable future. Possible. It's certainly possible in the reasonably foreseeable future as long as it's possible they could win on the withholding claim. You're not saying it's impossible they could win. It's not that impossible, but then whether there's any way that government can actually remove. And government has to come up with some evidence, just minimum evidence to even show that that can happen. And the only argument the government is making in this case and in this government's burden. Is that they might win? I don't think they're going to. They have explained how they would win. But they have not explained anything to this court before the district court. The only assertion the government is making to establish their burden is that they have the capacity to obtain a tribute document if he loses his CAT claim with respect to the Dominican Republic. But that's the only argument. And the other arguments government is relying is arguing that they want to wait until the end of his current withholding proceeding. And then spend resources to find a third country. And then even then, they would try to invoke the special dangerous regulation, which does not even trigger in this case. Because that requires crime of violence under 18 U.S.C. 16. And he only has drug trafficking crimes, which are not crimes of violence. Let me understand. There's two different standards that seem to be floating around. One is reasonable foreseeability of removal, which makes sense to me as an assessment in the Zavidas-type circumstance or even the Clark circumstance. The only question is, is there some other country to go to? You want us to now say, is it reasonably probable that they'll win their case? Is that the standard you're trying to apply? If that's not the standard, what is the standard we're supposed to use to assess whether they're going to win? Do you follow what I'm asking? I think realistically, the court has to assess at a minimum as applied to this case whether he's going to win his CAT claim. What does that mean, whether he's going to win? Just do a pure merits de novo analysis? No. 51-49, we think he'll win. Therefore, now we say, okay, Zavidas applies? I understand your honest concern. But that's something this court can consider based on government's argument. Well, just look at the face of it. There's an appeal going on. They're still in the proceeding trying to remove the person. There's a challenge based on withholding of removal. We just got a notice about what the situation of things are. So what is the standard you want us to apply in assessing the merits of the thing that's being adjudicated? I think if the court agrees with us on the outcome of the case, this court can do that. What does that mean, agree with you on the outcome? 51-49, we agree? Just do pure merits de novo? No, in light of the petitioner's good reasons to show that there's no such likelihood of removal and the fact that government failed to rebut that. You're not really answering my question. In assessing the merits, what is the standard of review you want us to apply to assess the merits? No possible chance of the government winning, reasonably likely that they'd lose, de novo. What do you want us to do? Whether the government has submitted any evidence to rebut the showing. I understand Your Honor's concern. Can't we just look at the materials that have been filed? They've sent some evidence. This is their case for why they think they'll win. They didn't even say any argument, Your Honor, in this case other than it's just speculative. That's it. Is it an ongoing proceeding? Yes, Your Honor. Can't we take judicial notice of what they filed in those cases? This court can, as this court previously granted. Okay, so now we have that. And what's our standard for reviewing whether what they filed is enough? I think in terms of— Frivolous? De novo we think it's wrong? I think under the habeas standard it's de novo. However, for the purpose of assessing whether the likelihood of success in the underlying immigration case affects the assessment of the Zavita standard, this court can take the most recent case, which is the most recent decision, which this court's opinion in the underlying petition for review to assess. It's just applied to this case based on the facts of this case, whether a government has successfully rebutted that they're showing. I see that my time is up. Oh, I'm sorry. It's the remaining time. I welcome additional questions the court has. If not, then I will save the time for the rebuttal. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce the record? Good morning, Your Honors. Jeffrey Harbin appearing for federal respondent appellees. The court should deny GP's appeal because the district court properly concluded that as a habeas petitioner, he did not meet his burden of demonstrating that there's no significant likelihood of removal in the reasonably foreseeable future. Judge Barron, you're right. The core Zavidas claim is a situation where there's a practical foreign policy impediment to removal. Zavidas couldn't be removed to Germany, Lithuania, or the Dominican Republic where it family lies. Ho Kim Ma, the other case the Supreme Court considered, there was no repatriation treaty between Cambodia and the United States. And so Zavidas is a situation where there is a practical foreign policy impediment that prevents the non-citizens' removal. And that's very clearly what we don't have here. GP was removed or ordered removed in 2004 and actually removed in January of 2011 after he was convicted of trafficking cocaine in Massachusetts. DHS was able to effectuate that order within approximately 45 days of taking him into custody. And so we know that there's no practical impediment like Zavidas that's going to impede the government's ability to remove GP if he is ultimately unsuccessful on his cat deferral claim. And I think the reason why there aren't any courts like this, Judge Barron, is that you're right. If GP's interpretation of Zavidas was correct, then any non-citizen withholding only proceedings or any other, well, I guess primarily withholding only proceedings at the 181-day mark could file a habeas petition and seek release. And that's a really strange circumstance, one that the Fourth Circuit rejected in Castellanos. In that case, I think implicit in my friend's argument is this idea that he's entitled to an error-free adjudication by the agency of his cat deferral case. And when you look at the cases like Castellanos, that was a situation where the board reversed the immigration judge three times. And Martinez, the Court of Appeals, granted a petition for review and then denied the habeas. And so cases abound where there was a prior petition for review that was successful for the non-citizen and nevertheless applying the Zavidas standard, which is looking at reasonable foreseeability, courts have denied habeas petitions because so long as the non-citizen is party to a pending proceeding, Is there any temporal outer limit to your argument as long as there's a pending matter? Our position is that I'm not asking you what the limit is, but is there one? I think there could be, Your Honor. I think Zavidas was a statutory interpretation case, and so we think that detention is statutorily authorized under A6 as long as there's a pending proceeding. But cases like Arteaga-Martinez and Castellanos, the government recognized that there's always a habeas safety valve if there's an exceptional situation. The Fourth Circuit What is that situation? I mean, they say why isn't the situation this? It's been three and a half years, and there's no prospect the government's going to win. And you can tell that this Thursday, or at least the government's not making any argument that they're wrong in saying that. Is the government making an argument that they're wrong in saying that? So I don't want to speculate about the outcome of the proceeding. Their point is if you're not going to speculate about it, then their contention is you haven't made any argument that you're going to win. So I guess I would point to the Court's prior opinion. It remanded on the expert testimony issue and left all the other issues open to the immigration judge. The February 2024 remand order of the Board left the record open for additional testimony and evidence. I guess just to judge Howard's question, when you say there's this safety valve, are you saying that there is room then for us to review the merits in some extraordinary cases or not? I think that, well, in this case, I think that there's not because GP waived any due process challenge. He has a strict statute. I see. And the statutory interpretation point then, when you said the habeas, you meant habeas with respect to the due process claim, not the statutory interpretation claim. Yes, Your Honor. And so with respect to the statutory interpretation claim, is the idea then that we never look at the merits? I think that's right, Your Honor, as long as there's a pending proceeding. And what about the situation of the case in which what was pending was a discretionary decision by the Attorney General and the Attorney General says something like, I'll get to it when I get to it? So that's the Nataraj case out of the Ninth Circuit, and the Ninth Circuit concluded that detention in that circumstance had become indefinite. This isn't a case where a GP's case has been certified to the Attorney General, so I guess it's factually distinguishable. And what is that distinction? If we didn't want to say the Ninth Circuit was wrong because that case looks like a case in which there is a potential for indefinite detention, which seems to me the driving statutory interpretation concern, that the statute can't be read to permit indefinite detention. So if it's reasonably likely there will be indefinite detention, then you have to let them go. And what is the difference between that situation certified to the Attorney General, the Attorney General says someday I'll get to it, and this case in which it seems like he never can get a final adjudication of the withholding because there keep being errors and raymans and it goes on and on and on. So I think the primary distinction is that the certification to the Attorney General is a discretionary determination. It just hasn't happened here. There's no evidence that it will happen. And so I think the Court can just distinguish the case on the facts, as the Ninth Circuit subsequently did, in Pareto-Romero, which dealt with three-and-a-half-year detention and concluded that the noncitizen hadn't met their burden of demonstrating that removal was no longer reasonably foreseeable. And the Ninth Circuit cabined its own decision in Nataraj, which dealt with the certification issue. And so our position is that this Court should follow the Ninth Circuit's subsequent reasoning where And so the thought here is that there's no, this is not pending some discretionary determination that never has to be made. It's pending a process which will come to a certain outcome. We just don't know how long exactly that's going to take. But that's just not indefinite. That's just unclear how long it's going to take. Whereas a discretionary determination of the concern is indefinite because it just, there's no indication it will ever be made. Correct, Your Honor. And I think the Fourth Circuit had it exactly right that withholding only proceedings like GP's have a finite end. This will end at some point. If GP is ultimately successful, the government could attempt to remove him to a third country at that point. The regulations at 8 CFR 241.13 mirror the Zavada standard. And so if the government consultation with the State Department determines that third country removal isn't feasible, the procedure in place is to release him. The only circumstances in which the government would continue to detain someone are those in, the special circumstances in 8 CFR 241.18. And I take my friend's point. We don't think they apply either, but this special dangerousness determination is the only one that's made at the field level, and there's robust procedural protections in place for the non-citizen if it ever applied. We don't think that it would in this case. And it is, as Your Honor made the point earlier, extremely burdensome for the government to try and attempt to locate a third country of removal prior in the proceedings. The government knows that it can execute the reinstated removal order to the Dominican Republic. The chain declaration at 1561 to 1569 makes clear that the government has approximately two removal flights to that country every month and can quickly obtain a travel document. In GP's post-order custody reviews under 241.4, GP admitted that he would cooperate with the government to obtain a travel document. So this just isn't a case like Zavida's, but there's some practical foreign policy impediment that's going to prevent the removal. I'm happy to answer the Court's other questions. Thank you. Thank you very much, Your Honors.  Thank you, Counsel. At this time, the counsel for the appellant would please introduce themselves back on the record. You have a rebuttal. May it please the Court, Samuel Kim for Petitioner. Your Honor, I just want to make one point, that uniqueness of this case. I'm not aware of any other CAT claims where this Court granted the petition under the Substantial Evidence Review in a way that is so dispositive to the underlying claim. Now, I understand that the end of withholding when you're proceeding with respect to the Dominican Republic has an end point. But that does not automatically mean the end of his detention claim. Yeah, but I guess the question is, right at this moment, do we have a reason to think that the detention will be indefinite? Because at the end point of it, for all we know, he'll be released. I understand. Do you see what I'm saying? And that's just we couldn't say that in Zavida's. We couldn't say it in Clark. Not us, but the Court couldn't. And even in the Ninth Circuit case, one couldn't say that. Because all we know is we're waiting for the Attorney General to do something, and we never know when that will happen. But that's just not what we're in in a situation like that. So if we just ask now, do I have a concern about indefinite detention that's equivalent to the concern in any of those cases, how could one say yes? That really depends on the government's position. For example, if the government agrees with us that if the end of withholding on the proceeding, current withholding on the proceeding means he will be released. No, what they say is at that point either they will demonstrate that it's reasonably likely they'll get him to another country or he'll be released, which I understand is exactly what the government said. I understand. But that's more like asking petitioner to wait and see what happens when the presumptive, the period the Supreme Court mentioned in Zabitaz was six months. And now it has been three and a half years. So we ask the Court to reverse the District Court's decision. Thank you. Thank you. Thank you, Counsel. That concludes argument in this case.